(No. 29558.—

WILLIAM F. STERNBERG *et al.*, Appellees, *vs.* ST. LOUIS
UNION TRUST COMPANY, Appellant.

*Opinion filed September 18, 1946.*

BRYAN, CAVE, MCPHEETERS & MCROBERTS, of St. Louis, Mo., TAFT & PUTMAN, of Canton, and H. S. BOYD, of Lewistown, for appellant.

S. MAYNER WALLACE, of St. Louis, Mo., and RATCLIFF & PROCTOR, of Lewistown, for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal by St. Louis Union Trust Company from a decree of the circuit court of Fulton county. The facts alleged in the pleadings and established by the evidence are not in dispute. The case is here solely on a question of law.

On September 14, 1937, Herman J. Sternberg, who was then a resident of St. Louis County, Missouri, executed his last will and testament. At that time he was unmarried. By the will he provided first for the distribution of certain personal property. He then devised the remainder of his estate, both real and personal, in trust, to his brother Emil O. Sternberg and St. Louis Union Trust Company, as cotrustees. Upon the death of his brother Emil O. Sternberg, the individual trustee, or his inability to act for any reason, he named his brothers William F. Sternberg and Louis E. Sternberg, and his sisters Emma A. Walthers and Minnie S. Hilbrant, as successors cotrustee, in the order named. He also named St. Louis Union Trust Company as executor of his will.

After the will had been executed and published by the testator, he was married to appellee Edna W. Sternberg. This marriage took place July 31, 1943, at Collinsville,

Illinois. The parties here all properly concede that the fact that the marriage occurred in the State of Illinois is wholly without significance. After his marriage he continued to reside with his wife in St. Louis County, Missouri, until his death on January 10, 1944. He left surviving as his only heirs-at-law, his widow, two brothers and two sisters. His brother Emil O. Sternberg, named as cotrustee in the will, predeceased the testator. The will was admitted to probate by the probate court of St. Louis County, Missouri. St. Louis Union Trust Company was appointed executor. At the time of his death he owned substantial property in the State of Missouri and also valuable real estate and personal property located in Fulton county, and in other counties in the State of Illinois.

On March 28, 1944, an authenticated copy of said will with statutory certificates attached, was presented to the county court of Fulton county, Illinois, by St. Louis Union Trust Company. On petition of said trust company it was admitted to probate under section 87 of the Probate Act. (Ill. Rev. Stat. 1945, chap. 3, par. 239.) Letters testamentary were issued to St. Louis Union Trust Company, as executor. There was no appeal from the order admitting said will to probate. St. Louis Union Trust Company did not at the time said copy of the will was admitted to probate, disclose to the county court of Fulton county that the testator had married subsequent to the execution of the will, and that court had no knowledge of such marriage.

Within nine months from the date said will was admitted to probate by the county court of Fulton county, this suit was filed by all the heirs-at-law of the testator, except his widow, and all the beneficial devisees and legatees under said will, to contest the same. St. Louis Union Trust Company, individually and as executor and trustee, and the widow of the testator, Edna W. Sternberg, were named as defendants in the suit. After the will was admitted to probate by the county court of Fulton county, the widow

filed her renunciation. She, therefore, has no further interest in the will or in this suit. She did not join in this appeal and was served with notice of appeal as an appellee.

The ground upon which plaintiffs contested the will is that the marriage of the testator after the execution of the will constituted a revocation of the will under the statutes of Illinois. To meet and obviate this objection, St. Louis Union Trust Company pleaded and relied upon sections 521 and 522 of Article XX, chap. 1, of the Revised Statutes of the State of Missouri, which are as follows:

"Sec. 521. Revocation of wills, what will be, and how effected.—No will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, except by a subsequent will, in writing, or by burning, canceling, tearing or obliterating the same, by the testator, or in his presence, and by his consent and direction. (R. S. 1929, Sec. 520.)

"Sec. 522. Revocation of will by the marriage of testator and his leaving issue.—If, after making a will, disposing of the whole estate of the testator, such testator shall marry and die, leaving issue by such marriage living at the time of his death, or shall leave issue of such marriage, born to him after his death, such will shall be deemed revoked, unless provisions shall have been made for such issue by some settlement, or unless such issue shall be provided for in the will; and no evidence shall be received to rebut the presumption of such revocation. (R. S. 1929, Sec. 521.)"

Under the above sections of the Missouri statute, the testator having left no issue of his marriage with Edna W. Sternberg, his will was not revoked by such marriage. The sole question, therefore, presented by this record, is whether the will, which is valid under the laws of Missouri, was revoked by the marriage of the testator, in so far as it purports to pass title to real estate located within the State of Illinois. The chancellor held that the will, in so far as

it attempted to devise real estate located in Illinois, was revoked by the marriage of the testator subsequent to the execution of the will. He further held that it was valid and effective as to personal property located within this State for the reason that the situs of such personal property was the domicile of the testator. The order of the county court admitting the will to probate was held valid in so far as the will operated upon such personal property, but invalid in so far as it purported or attempted to devise the real estate located within this State.

From that decree St. Louis Union Trust Company perfected the appeal. It concedes that at the common law and in the absence of a statute to the contrary all questions concerning the execution and revocation of a will affecting the title to real property, as well as all questions concerning its validity and construction, are governed by the law of the State in which the land is located. It contends, however, that this rule has been modified by statute in Illinois, and as so modified, a foreign will, if valid in the State in which the testator was domiciled, is sufficient to pass title to real estate located in Illinois, notwithstanding it may not have been executed in the manner required or had been revoked under the laws of Illinois. Its specific contention here is that the will not having been revoked by the subsequent marriage of the testator under the laws of his domicile, is valid in Illinois, notwithstanding the provision of our statute which declares that such marriage shall be deemed a revocation of any existing will executed by the testator prior to such marriage.

The rule is established in this State and, we believe, in all States, that the validity and construction, as well as the force and effect of all instruments affecting the title to land, depend upon the laws of the State or country where the land is situated. In the late case of *Fuhrhop* v. *Austin*, 385 Ill. 149, we said: "This court has many times announced that the descent of real estate is governed by

the law of the situs. In *Hall* v. *Gabbert*, 213 Ill. 208, this court (quoting from *United States* v. *Fox*, 94 U. S. 315,) said, 'It is an established principle of law, everywhere recognized, arising from the necessity of the case, that the disposition of immovable property, whether by deed, descent or in any other mode, is exclusively subject to the government within whose jurisdiction the property is situated.' In *Stoltz* v. *Doering*, 112 Ill. 234, quoting from Story on Conflict of Laws, we held, 'The descent and heirship of real estate are exclusively governed by the law of the country within which it is actually situated. No person can take except those who are recognized as legitimate heirs by the laws of that country.' "

The same rule was announced and followed in *Plenderleith* v. *Edwards*, 328 Ill. 431; *Dibble* v. *Winter*, 247 Ill. 243; *Peet* v. *Peet*, 229 Ill. 341; *Harrison* v. *Weatherby*, 180 Ill. 418, and in many other decisions of this court. The rule was well stated by the Supreme Court of Missouri in *Dobschutz* v. *Dobschutz*, 279 Mo. 120, 213 S. W. 843, as follows: "The rule prevails, not only in this State, but is of universal application, that the title to land can be acquired only according to the law of the place where it is situate. Land may be devised in this State by a non-resident testator, but his will will take effect and be interpreted according to the law of this State. Section 567, Revised Statutes 1909. (*Hughes* v. *Winkleman*, 243 Mo. l. c. 92; *Keith* v. *Keith*, 97 Mo. 223, l. c. 230.) The will of Moritz Dobschutz can have the same effect and only the effect it would have if he had been a resident of this State and his will had been originally proved in this State." The universality of the rule has been recognized by the Supreme Court of the United States. *Olmsted* v. *Olmsted*, 216 U. S. 386, 30 S. Ct. 292; *Clarke* v. *Clarke*, 178 U. S. 186, 20 S. Ct. 873; *De Vaughn* v. *Hutchinson*, 165 U. S. 566, 17 S. Ct. 461; *Robertson* v. *Pickrell*, 109 U. S. 608, 3 S. Ct. 407.

It is unnecessary to refer to the various sections of prior statutes relied upon or to review the decisions construing those statutes. The applicable provisions of the present Probate Act are controlling. Section 85 of that act, which is now in force, (Ill. Rev. Stat. 1945, chap. 3, par. 237,) provides as follows: "A written will signed by the testator when proved as provided in this Article may be admitted to probate in this State when (a) the will has been admitted to probate outside of this State or (b) the will was executed outside of this State in accordance with the law of this State, of the place where executed, or of the testator's domicile at the time of its execution." Section 89 declares the effect of the probate of a foreign will in this State as follows: "The admission to probate in this State of a will executed and proved in the manner provided by this Article has the same effect in all respects as the admission to probate of a domestic will, * * *."

Prior to the passage of the Uniform Foreign Probate Act in 1917, (Ill. Rev. Stat. 1937, chap. 148, par. 26 *et seq.,*) it was not necessary that a foreign will be admitted to probate in this State. It was sufficient that an authenticated copy with a certificate that it had been duly executed and proved, agreeable to the laws of the foreign State, be filed in the office of the clerk of the county or probate court. (*Barnett* v. *Barnett,* 284 Ill. 580; *Stull* v. *Veatch,* 236 Ill. 207.) Under that act, however, it was necessary that all foreign wills, to be effective in this State, be proved in the manner provided in the act and admitted to probate. (*Martin* v. *Central Trust Co.* 327 Ill. 622.) The same rule prevails under the 1939 Probate Act.

Section 85 permits a foreign will to be admitted to probate in Illinois. When so probated, section 89 provides that such probate shall have the same effect as the probate of domestic wills. The effect of the probate of a will is to transfer the title to the real and personal estate

of the testator and to establish the validity of the will against collateral attack. (Ill. Rev. Stat. 1945, chap. 3, par. 205; *Havill* v. *Havill,* 332 Ill. 11; *Slick* v. *Brooks,* 253 Ill. 58; *Dibble* v. *Winter,* 247 Ill. 243.) A judgment order admitting a will to probate, however, is not final as to its execution or validity. It does not prevent a contest as to the validity of the will in a direct proceeding brought for that purpose, which is specifically provided for by section 90 of the Probate Act. (Ill. Rev. Stat. 1945, chap. 3, par. 242.) The admission of a will to probate is a prerequisite to the right to contest it in a direct proceeding. (*Shelby Loan and Trust Co.* v. *Milligan,* 372 Ill. 397; *Handley* v. *Conlan,* 342 Ill. 562; *Buerger* v. *Buerger,* 317 Ill. 401.) If no such proceeding is brought the validity of the will is finally established by its admission to probate for all purposes. If, however, a suit is brought within the time allowed to contest the will, in that proceeding the order admitting it to probate has no force or effect. The purpose of allowing a will to be contested after it has been admitted to probate is to give to the contestant an opportunity to thoroughly investigate all the circumstances relating to the execution of the will, the capacity of the testator, and other facts affecting the validity of the will. *Davis* v. *Upson,* 209 Ill. 206.

In a suit to contest a will the question is not whether the will was properly admitted to probate or the effect of such probate, but whether the will shall be declared invalid upon being directly challenged in such direct proceeding. All questions concerning the validity of the will are tried *de novo.* (*Buerger* v. *Buerger,* 317 Ill. 401; *Pratt* v. *Hawley,* 297 Ill. 244.) A will after it has been admitted to probate may be contested on any grounds including its revocation. (*Dowling* v. *Gilliland,* 275 Ill. 76.) The case of *Davis* v. *Upson,* 209 Ill. 206, was a suit to contest a foreign will. The testatrix was a resident of New York. She left personal property in the hands of an agent in

this State, who was named as executor. The will was admitted to probate in Cook county. In holding that the order admitting the will to probate could not be attacked in the suit to contest the will, the court said: "But the question whether the probate of the will was valid and effectual did not arise in the cause. The proceeding was a bill in chancery, filed under section 7 of the Statute of Wills, (3 Starr & Cur. Stat. 1896, p. 4035,) to contest the validity of the will. This section authorizes a court of equity to entertain a bill to contest the validity of a will, and the statute provides that if such a bill is filed, 'an issue at law shall be made up, whether the writing produced be the will of the testator or testatrix or not, which shall be tried by a jury in the circuit court of the county wherein such will, testament or codicil shall have been proven and recorded as aforesaid, according to the practice of courts of chancery in similar cases.' The proceeding is statutory, the object being to give the contestant of a will an opportunity to thoroughly investigate all the circumstances relating to the execution of the will, the capacity of the maker thereof to execute the instrument, and other facts affecting the validity of the will. The statute definitely and distinctly states the issue to be heard and determined in the proceeding is whether the writing produced be the will of the decedent. No issue relating to the validity of the order admitting the will to probate is provided for by the enactment."

At the common law and in the absence of a statute to the contrary, under the authorities above cited, all questions concerning the execution, the validity and the revocation of a will, in so far as it purports to devise real estate located in Illinois, as well as all questions concerning its construction, are governed by the laws of the State where the land is located. Unless such a will is executed in accordance with the laws of that State and has not been revoked in any manner provided by such laws, its admis-

sion to probate in the State of the testator's domicile, or its admission to probate, as a foreign will, under the Probate Act, is wholly ineffectual to pass title to real estate located in this State, when its validity is questioned in a direct contest proceeding.

In this State the common-law rule has been modified by the Probate Act only to the extent that a foreign will may be admitted to probate when executed in accordance with the law of the testator's domicile, or in accordance with the law of the place where executed, or where it has been admitted to probate in a foreign State. (Ill. Rev. Stat. 1945, chap. 3, par. 237.) When so admitted to probate in this State, it is valid for all purposes, unless set aside in a suit brought to contest it. It cannot be collaterally attacked in any other proceeding. After it has been so proved and admitted to probate, it may be contested in a suit filed for that purpose, the same as a domestic will. Upon such contest the order admitting it to probate is not involved and carries no weight. Its execution and validity must be determined *de novo*. As to personal property, its validity must be determined according to the laws of the State in which the testator had his domicile for the reason that that is the situs of his personal property. As to real estate its validity must be determined by the law of the State in which the land is located. In all such cases the *lex rei sitae*, controls. *Fuhrhop* v. *Austin*, 385 Ill. 149; *Plenderleith* v. *Edwards*, 328 Ill. 431; *Peet* v. *Peet*, 229 Ill. 341; *Hall* v. *Gabbert*, 213 Ill. 208; *Stoltz* v. *Doering*, 112 Ill. 234.

The cases cited and relied upon by appellant are cases in which it was sought to attack the validity of a foreign will in collateral proceedings. When the language of those cases is read in the light of the fact that the court was considering only the question of the right to contest a foreign will in a collateral proceeding, it is clear that they are authority only on that point. Furthermore, the court

in those cases was considering the effect of section 9 of the Statute of Wills, which was then in force. There is a marked difference in the language of section 89 of the Probate Act, which is now in force, and section 9 of the Statute of Wills, which was expressly repealed by the Probate Act. Section 9 provided that authenticated copies of foreign wills, when filed in this State, "shall be good and available in law in like manner as wills made and executed in this State." Section 89 provides that, "The admission to probate in this State of a will executed and proved in the manner provided in this Article has the same effect in all respects as the admission to probate of a domestic will." Section 9 provided that a foreign will, when an authenticated copy is filed in this State, together with the required certificate, shall be "good and available in law," in like manner as domestic wills. Section 89 provides that the admission of a foreign will to probate shall have the same effect as an order admitting a domestic will to probate. Whatever may have been the effect of section 9 of the Statute of Wills as to foreign wills in this State, it is clear that it was intended by section 89 of the Probate Act to limit the effect of an order admitting a foreign will to probate and place such orders on the same basis as like orders admitting domestic wills to probate, that is, to establish the validity of the will free from collateral attack unless and until it is contested and set aside in a direct proceeding. The language used in section 89 indicates no intention to change the substantive law regarding the disposition of real estate by will. It does not in any way modify or change the rule of the common law which has been approved in a long line of decisions of this court, down to, and including, *Fuhrhop* v. *Austin,* 385 Ill. 149.

The law of Illinois with reference to revocation of wills is that in the absence of evidence in the will of a specific contrary intention, it will be considered that the

testator who subsequently marries intended to revoke his will. Section 46 of the Probate Act (Ill. Rev. Stat. 1945, chap. 3, par. 197,) provides that "Marriage by the testator shall be deemed a revocation of any existing will executed by the testator prior to the date of the marriage." This section has been construed by this court to mean that, in the absence of evidence in the will of a specific contrary intention, the marriage of the testator operates *per se* as a revocation of all prior wills. (*Kuhn* v. *Bartels,* 374 Ill. 231; *Lawman* v. *Murphy,* 321 Ill. 421; *Wood* v. *Corbin,* 296 Ill. 129; *Hudnall* v. *Ham,* 183 Ill. 486; *McAnnulty* v. *McAnnulty,* 120 Ill. 26.) It is not contended that any such contrary intention may be found in the will here under consideration.

Applying the foregoing rules to the case at bar, it must be held that the will of Herman J. Sternberg, executed in 1937, was, under the law of Illinois, revoked by his subsequent marriage in 1943. Insofar as it attempted to effect a disposition of his real property located in Illinois, it was wholly invalid and inoperative.

In addition to the other relief prayed for in the complaint, appellees asked that the letters testamentary, issued to the St. Louis Union Trust Company by the county court, be revoked. The question of the right of the county court to appoint a nonresident corporation as executor is not properly presented by this record. Such question can only be raised on a proper petition filed in the county court for the revocation of such letters and the appointment of an administrator with the will annexed. Inasmuch as the question is not properly before us, anything said in this opinion should not be construed as having any bearing on that question.

The decree of the circuit court of Fulton county is, in all respects, affirmed.

*Decree affirmed.*